**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LARRY TATE, | |
| Plaintiff, | |
| v. | Case No. 17-cv-8888 |
| THOMAS J. DART, in his official capacity as Sheriff of Cook County, Illinois and joint employer; COUNTY OF COOK, a unit of local government as joint employer and indemnor; REBECCA REIERSON, in her official and individual capacities; SABRINA CONCHOLLA, in her official and individual capacities; and, MATTHEW BURKE, in his official and individual capacities; | |
| Defendants. | Plaintiff Demands Trial by Jury |

## COMPLAINT

Plaintiff LARRY TATE, by and through his undersigned attorney, Cass T. Casper,

TALON LAW, LLC, complains as follows against Defendants THOMAS J. DART, Sheriff

of Cook County, COUNTY OF COOK, REBECCA REIERSON, SABRINA CONCHOLLA,

and MATTHEW BURKE:

### Nature of the Action

1. Plaintiff LARRY TATE (hereinafter, "Plaintiff" or "Tate") brings this action for

   violations of the American With Disabilities Act, 42 U.S.C. §§ 12101-12213, as

amended ("ADA") (Count I); for violations of the Illinois Human Rights Act ("IHRA") pursuant to 775 ILCS 5/1-101 *et seq.* (Count II); for violations of his civil rights pursuant to 42 U.S.C. §§ 1983 and 1988 (Counts III, IV and V); and, for indemnification by Defendant County of the other Defendants pursuant to 745 ILCS § 10/9-102 (Count VI). Plaintiff seeks all available relief, including, but not limited to, declaratory, compensatory, injunctive and equitable relief, and punitive damages and attorney's fees.

2.  This Complaint stems from the individual Defendants' direct and personal involvement in discrimination against Tate for making accommodation requests pursuant to the ADA, and from the individual Defendants' direct and personal retaliation against Tate for having filed a prior charge of ADA-based discrimination with the EEOC in October 2013 that ultimately settled in October 2015.

3.  In summary, all Defendants engaged in discrimination and retaliation against Tate by depriving him of a promotion to Correctional Lieutenant after he was already qualified for such promotion due to Defendants' claims that there was no Correctional Lieutenant position he could occupy with his restrictions. Such is a pretext for discrimination and retaliation against Tate, who could have held several positions as Correctional Lieutenant constituent with his restrictions.

**Jurisdiction and Venue**

4.  This Court has original subject matter jurisdiction over Plaintiff's federal claims
    pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This Court has supplemental
    jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

5.  Venue is proper in this judicial district in accordance with 28 U.S.C. § 1391(b) and
    (c), as Plaintiff and all Defendants either reside in this district or have their
    principal place of business in this district, and all events giving rise to Plaintiff's
    claims occurred within this district. Venue in this court is also proper pursuant to
    29 U.S.C. § 626(c).

**Parties**

6.  Plaintiff TATE is a citizen of the United States who resides in Cook County,
    Illinois, and an employee of Defendants Sheriff and the County within the Cook
    County Department of Corrections. Plaintiff Tate was hired by Cook County
    through the Sheriff's Office in October 2007.

7.  At all times relevant, Plaintiff Tate has been a qualified individual with a disability
    pursuant to the ADA.

8.  Defendant COOK COUNTY is a municipality incorporated under the laws of the
    State of Illinois. Cook County administers itself through departments, one of
    which is the office under the authority of Defendant Sheriff. At all relevant times,
    Defendant Cook County, at least through the Defendant Sheriff, has been

3

continuously engaged in an industry affecting commerce. Cook County is named as indemnor of all of the other Defendants.

9. At all relevant times, Defendant THOMAS J. DART (hereinafter, "the Sheriff" or "Dart") has served in the elected position of Sheriff of Cook County, Illinois. Dart was at all relevant times hereto a final decision maker and policy maker in the Sheriff's Office. Defendant Dart is sued in his official capacity only.

10. At all times relevant, Defendant REBECCA REIERSON (hereinafter, "Reierson") was employed by the Sheriff as an attorney with the Sheriff's Bureau of Human Resources responsible for, *inter alia*, assessing accommodation requests pursuant to the ADA.

11. Reierson was at all relevant times hereto a final decision maker and policy maker in the Sheriff's Office. Reierson is sued in her official and individual capacities.

12. At all times relevant, Defendant SABRINA CONCHOLLA (hereinafter, "Concholla") was employed by the Sheriff as an attorney with the Sheriff's law department responsible for, *inter alia*, assessing accommodation requests pursuant to the ADA.

13. Concholla was at all relevant times hereto a final decision maker and policy maker in the Sheriff's Office. Concholla is sued in her official and individual capacities.

14. At all times relevant, Defendant MATTHE BURKE (hereinafter, "Burke") was employed by the Sheriff as Chief of Staff of the Department of Corrections.

4

15. Burke was at all relevant times hereto a final decision maker and policy maker in the Sheriff's Office. Burke is sued in his official and individual capacities.

16. At all times relevant, all Defendants acted under color of law.

### Administrative Proceedings

17. On March 13, 2017, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based upon his disabilities and retaliation in EEOC Charge Number 440-2017-02200. *See* Exhibit 1, p.1 (attached hereto and incorporated by reference herein).

18. On or about August 16, 2017, Plaintiff, through undersigned counsel, requested a right-to-sue letter for EEOC Charge Number 440-2017-02200. *See* Exhibit 1, p.2.

19. On or about September 13, 2017, undersigned counsel received a notice from the EEOC that his request for a right to sue letter was forwarded to the Department of Justice. *See* Exhibit 1, p. 3 - 4.

20. On or about November 8, 2017, Plaintiff received a notice of right to sue on his charge from the Civil Rights Division of the U.S. Department of Justice. *See* Exhibit 1, p. 5.

21. Plaintiff's disability discrimination and retaliation claims are, therefore, timely filed within 90 days of the receipt of the notice of right to sue letter from the U.S. Department of Justice.

5

22. Plaintiff's EEOC Charge was filed more than sixty (60) days prior to bringing this claim.

**Factual Allegations Common to All Counts**

23. Tate started his employment as a Correctional Officer with the Cook County Sheriff's Office in October 2007, and bid or was assigned thereafter to various units or divisions of the Cook County Department of Corrections.

24. In December 2010, Tate suffered a workplace injury that required back surgery and extensive rehabilitation. He was cleared to return to work in April 2012, whereon the Sheriff unilaterally assigned him to work in an interlock.

25. In October 2012, Tate was promoted to Sergeant.

26. On his promotion, the Sheriff, again, unilaterally assigned Tate to a position that violated his medical restriction on lifting above 55 to 60 pounds. He requested reassignment, and was, thereafter, moved to the Division 5 lobby, but provided no training whatsoever for the position.

27. On his initial assignment to the Division 5 lobby, Tate was permitted to work up to four hours of overtime necessary to cover the lobby's open hours of 9 a.m. to 9 p.m. However, after requesting training for the lobby position in December 2012, the Sheriff began denying all of Tate's overtime and assigning it to other employees in violation of the Collective Bargaining Agreement covering Correctional Sergeants.

28. When Tate brought the issue of his overtime denials to Superintendent Erica Queen in April 2013, she advised Tate that he was not entitled to work overtime because he had a disability.

29. Tate filed a charge of disability discrimination with the EEOC on or about October 31, 2013 and received a right to sue letter on March 24, 2014. Tate filed a corresponding federal complaint on June 16, 2014. In October 2015, Tate's discrimination claim settled.

30. However, immediately following completion of the above-noted settlement, and in retaliation for Tate's legal action, he was transferred to the Classification unit within the Receiving area of the jail on the alleged basis that now a Sergeant was not needed in the Division 5 lobby.

31. Tate was never counseled, disciplined, nor accused of failing to be able to perform the essential functions of the job in the Division 5 lobby, nor, later in the Classification unit.

32. Less than two weeks after Tate's transfer out of the Division 5 lobby, a non-disabled Sergeant was assigned to the Division 5 lobby, in contradiction to the representation made to Tate that no Sergeant was needed there.

33. Tate continued to work in Classification throughout 2015, and, in November 2015, he took the Correctional Lieutenant's examination.

34. In December 2016, Tate was notified that he was one of six sergeants promoted to the rank of Lieutenant.

35. Despite Tate's promotion, that same month he was notified by Defendants Reierson and Concholla that he would have to attend a meeting with them and provide medical clearance in order to continue as Lieutenant.

36. Tate was the only newly-promoted Lieutenant required to attend a meeting with Defendants Reierson and Concholla.

37. On December 9, 2016, Tate met with Reierson and Concholla in Defendant Burke's office. Reierson and Concholla represented to Tate that they were there on Burke's behalf and that Burke could not attend. They had Tate's documentation from his prior lawsuit and settlement with them during the meeting.

38. At the meeting, Reierson and Concholla advised Tate that all the newly-promoted Lieutenants would be assigned to Divisions IX or X, two allegedly high conflict areas of the Department of Corrections. Because of the allegedly high conflict nature of such positions, they told Tate he had to obtain full medical clearance with no restrictions to continue as a Lieutenant. Notably, on November 19, 2017, Superintendent Erica Queen distributed a Personnel Memorandum noting that two long-standing Lieutenants, Lashon Crump and Collin McArdle, would be transferred to Divisions IX and X, respectively.

8

39. On December 14, 2016, Tate provided a list of reconfirmed permanent restrictions from his treating physician to Defendant Reierson, including the lifting restriction on 55 to 60 pounds.

40. On December 15, 2016, Reierson advised Tate via email that, based on his restrictions, he is unable to perform the essential functions of the Correctional Lieutenant position. She also asked him to fill out a reasonable accommodation request form, but advised that avoidance of situations involving violence or conflict is not a reasonable accommodation for a Correctional Lieutenant. She also advised him that he could decline the promotion and remain a Sergeant.

41. Between December 12 through December 16, 2016, Tate attended Lieutenant training. At the end of it, Direction Michael Miller (hereinafter, "Director Miller") gave all of the other trainees assignments for the following week, except for Tate, who he told to report to Human Resources on December 19.

42. Contrary to what Reierson and Concholla advised Tate about all newly-promoted Lieutenants being advised to Divisions IX and X, Director Miller assigned the Lieutenants all over the Department of Corrections compound.

43. For example, Director Miller assigned Lieutenant Hillberger as the Lieutenant in Receiving, a position Tate could have occupied with his medical restrictions. Tate received no explanation as to why he was not so assigned. Lieutenant Hillberger has no known disability requiring such an assignment.

9

44. On December 19, 2016, Tate met with Defendants Reierson and Concholla in the presence of his union steward, Lieutenant Mundt. Both Defendants again represented that they were there on behalf of Defendant Burke, and further stated that Tate could not perform the essential functions of the Correctional Lieutenant position.

45. During the meeting, Defendant Concholla told Tate that he should not have been promoted at all because of his disability.

46. When Tate advised Reierson that he had no current assignment as a Lieutenant, Concholla became bellicose and ordered Tate to return to the shift and detail he occupied as a Sergeant in Classification.

47. Reierson and Concholla also told Tate during the meeting that his Lieutenant position would not be held open for him, and that his Sergeant position would also not be protected.

48. On December 19, 2016, Reierson sent Tate an email with another copy of a reasonable accommodation request form, asking him to complete and return it by December 23, 2016. The email also stated that, on receipt of the form, Tate would attend a meeting with Human Resources to discuss his accommodation proposals.

49. Tate timely completed the reasonable accommodation request form to include several assignments he believed he could occupy as a Correctional Lieutenant,

including, Classification, Laundry, External Operations, Warehouse, and Kitchen.

50. Notably, Lieutenant Nicole Lewis had long occupied the Lieutenant spot in classification, and Lieutenants Joseph Hillburger and Bernadette Lattimore-Truvillan were transferred to classification in November 2017. This assignment would work for Plaintiff's restrictions and none of these other Lieutenants have restrictions to Plaintiff's knowledge.

51. No meeting or interactive dialogue was had in response to Tate's reasonable accommodation request letter; instead, he received a summary dismissal of his request in a December 27, 2016 letter from Defendant Reierson.

52. Before Tate could file an appeal, Defendant Reierson sent him an email stating that he would be returned to the rank of Sergeant if no reasonable accommodation could be found by January 13, 2017. Tate was returned to the Sergeant's pay grade effective December 19, 2016, before he had an opportunity even to file an appeal.

53. Tate completed an accommodation request appeal on January 5, 2017; however, no one contacted him or his then-attorney to engage in an interactive dialogue about an accommodation.

54. In mid-January 2017, Tate sought treatment for chest pains, which his doctor attributed to anxiety and stress from the events set forth in this complaint.

55. When Tate returned to work following his bout with chest pains, he was asked to turn in his Lieutenant credentials. No one said anything to him about his reasonable accommodation appeal, and he has heard nothing about it since the appeal was filed.

56. Tate remains in the position of Sergeant at the time of the filing of this complaint.

## COUNT I

**(ADA – Discrimination based on Disability against Defendant Thomas J. Dart in his Official Capacity)**

57. Plaintiff realleges and incorporates by reference all other paragraphs in this complaint as if fully set forth herein.

58. As set forth above, Plaintiff had a disability as defined by the ADA, at the time Defendant Sheriff disregarded and/or ignored his repeated requests for an accommodation.

59. Plaintiff's medical records and/or history of injury and treatment constitute a "record of disability" as defined by the ADA. In addition, the fact that he has provided doctor's notes to the Bureau of Human Resources evidencing his medical restrictions places him within both the actual and perceived disability provisions of the ADA.

60. Defendant Sheriff, at least through his agents, has engaged in a policy, pattern, and practice of discrimination against Plaintiff based on his disability, including by denying him overtime opportunities he was able to perform, but that were

granted to other, non-disabled employees, and by undermining his promotion to Lieutenant and demoting him back to Sergeant without engaging in any meaningful interactive dialogue about a reasonable accommodation when there were positions available consistent with Plaintiff's medical restrictions.

61. Defendant Sheriff, through his agents, intentionally subjected Plaintiff to unequal and discriminatory treatment based on his disability that altered the conditions of Plaintiff's employment, including, *inter alia*:

    a. by requiring him to attend a meeting with Defendants Reierson and Concholla, acting on behalf of Defendant Burke;

    b. by failing to engage in an interactive dialogue with him;

    c. by failing to accommodate him;

    d. by failing to respond to his reasonable accommodation appeal;

    e. by denying him overtime opportunities;

    f. by unilaterally transferring him to deprive him of overtime opportunities;

    g. by demoting him to the rank of Sergeant based on his disability when he was already promoted to Lieutenant; and,

    h. by assigning non-disabled Lieutenants to areas of the Department of Corrections that would have worked for Plaintiff's restrictions without discussing same with Plaintiff or placing Plaintiff in those positions.

62. Defendant Sheriff, at least through his agents, intentionally discriminated against

13

Tate because of his disability, perceived disability, and/or record of disability by, *inter alia*, the actions noted in paragraph 59, *supra*, and by failing and refusing to engage in an interactive dialogue and accommodating him as a Correctional Lieutenant, and by demoting him to Sergeant.

63. Defendant Sheriff, at least through his agents, refused to engage in any meaningful interactive dialogue with Plaintiff as to potential accommodations that could be made, and/or failed and/or refused to provide him an accommodation to meet his medical restrictions, despite that such positions were open and available in various divisions and units of the Department of Corrections.

64. As set forth above, Defendant Sheriff, through his agents, refused to properly accommodate Plaintiff because of his disability, perceived disability, and/or record of disability.

65. Defendant Sheriff's intentional and reckless indifference of Plaintiff's rights violated the ADA in that such is a failure to accommodate his disability and to engage in a meaningful interactive process. It is also a violation of the ADA in that it is a refusal to place him in an available position consistent with his medical restrictions, despite that the Defendants are aware that the ADA required such accommodations and interactive dialogue.

66. Defendant Sheriff's actions constitute a pattern as to Plaintiff Tate, who already suffered grave injuries as a direct and proximate result of the Defendants failure

to provide him an accommodation upon his request in Fall 2015.

67. The actions of Defendant Sheriff, through his agents, in intentionally engaging in and condoning disability discrimination against Plaintiff and by failing to accommodate him has caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, and other consequential damages.

WHEREFORE, Plaintiff respectfully requests:

A. All benefits Plaintiff would have received but for the Defendant Sheriff's disability discrimination, including pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial;

C. A permanent injunction enjoining Defendant Sheriff from engaging in the discriminatory practices complained of herein;

D. A permanent injunction requiring Defendant Sheriff to adopt employment practices and policies in accord and conformity with the requirements of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (2000);

E. A declaratory judgment that Defendant Sheriff's actions violate the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111-12117;

F. That this Court retain jurisdiction of this case until such time as it is assured that Defendant Sheriff has remedied the policies and practices complained of herein and is determined to be in full compliance with the law;

G. Damages for actual emotional distress caused by the Defendant Sheriff's actions and omissions;

H. An award of reasonable attorneys' fees, costs, and litigation expenses; and

I.     Such other relief as this Court may deem just or equitable.

## COUNT II

**(ADA –Failure to Accommodate against Defendant Thomas J. Dart
in his Official Capacity)**

68. Plaintiff realleges and incorporates by reference all other paragraphs in this

complaint as if fully set forth herein.

69. At all times relevant, Tate was and is a qualified individual with a disability

under the ADA, *to wit*, suffering from documented orthopedic disabilities that

limit his ability to lift over 55 to 60 pounds.  Notwithstanding, Tate is able to

perform the essential functions of a Correctional Lieutenant.

70. At all times relevant, Defendant Sheriff, through his agents, was aware of Tate's

disabilities at least through his prior lawsuit, his multiple written and oral

reasonable accommodation requests, the Fall 2016 meetings between Tate and

Defendants Reierson and Concholla, and the medical documentation Tate

provided to the Sheriff's agents throughout all of the latter.

71. In his accommodation requests, Tate listed multiple existing accommodations

that would meet his medical restrictions, including by assignment to certain

areas of the jail as a Correctional Lieutenant, *to wit*, but not limited to,

Classification, Laundry, Records, External Operations, Warehouse, and the

Kitchen.

72. Despite Tate's multiple requests for existing reasonable accommodations, the Sheriff, through his agents Reierson, Concholla, and Burke, failed to engage in an interactive dialogue with Tate for the purpose of developing a reasonable accommodation for him as a Correctional Lieutenant.

73. Rather than engaging in an interactive dialogue and developing a reasonable accommodation for Tate, Defendant Sheriff, through his agents, unilaterally assigned him back to the Classification unit where he worked as a Sergeant, failed to pay him Lieutenant's pay between December 2016 and his demotion in January 2017 and thereafter, and, ultimately, demoted him back to Sergeant.

74. As a result of Defendant Sheriff's failure and refusal to accommodate Plaintiff, Tate has suffered lost wages, mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, and other consequential damages.

WHEREFORE, Plaintiff respectfully requests:

    A. All benefits Plaintiff would have received but for the Defendant Sheriff's failure to accommodate, including pre-judgment interest;

    B. A permanent injunction requiring Defendant Sheriff to permanently place Tate in an ADA-qualifying Lieutenant position that is consistent with his medical restrictions and to engage in a meaningful, timely dialogue about such a placement;

    C. Compensatory damages in an amount to be determined at trial;

17

D. A permanent injunction enjoining Defendant Sheriff from engaging in the discriminatory practices complained of herein;

E. A permanent injunction requiring Defendant Sheriff to adopt employment practices and policies in accord and conformity with the requirements of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (2000);

F. A declaratory judgment that Defendant Sheriff's actions violate the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111-12117;

G. That this Court retain jurisdiction of this case until such time as it is assured that Defendant Sheriff has remedied the policies and practices complained of herein and is determined to be in full compliance with the law;

H. Damages for actual emotional distress caused by the Defendant Sheriff's actions and omissions;

I. An award of reasonable attorneys' fees, costs, and litigation expenses; and

J. Such other relief as this Court may deem just or equitable.

## <u>COUNT III</u>

**(Illinois Human Rights Act Violations by Defendant Thomas J. Dart in his Official Capacity)**

75. Plaintiff realleges and incorporates by reference paragraphs all other paragraphs of this complaint as if fully set forth herein.

76. At all relevant times, Defendants Sheriff and Cook County were and are an "employer" within the meaning of the IHRA.

18

77. At all relevant times, Plaintiff was employed by Defendants Sheriff and Cook County and was an "employee" of such Defendants within the meaning of the IHRA.

78. Defendants did not give Plaintiff any reason as to why Defendants failed to accommodate Plaintiff or engage in a meaningful interactive dialogue with him about his restrictions.

79. Plaintiff filed a charge of discrimination with the IDHR alleging disability discrimination and has exhausted his available administrative remedies.

80. Defendant Sheriff, through his agents, acted intentionally and in bad faith when failing and refusing to accommodate Plaintiff on repeated occasions since Fall 2016 and Spring 2017, despite Plaintiff's repeated requests.

81. Defendant Sheriff and his agents are aware or should be aware that it is unlawful to discriminate against someone because of their disability.

82. Defendant Sheriff and his agents know or should know that employees must be treated equally regardless of any disability.

83. By reason of the foregoing, Plaintiff was discriminated against because of his disabilities in violation of 775 ILCS 5/2-102(A).

84. Defendant Sheriff's conduct caused Plaintiff damages, including, but not limited to, lost wages, lost overtime, emotional pain and suffering, humiliation,

degradation, inconvenience, lost benefits, future pecuniary losses, attorneys' fees

and expenses, and other consequential damages.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following

relief:

A. All wages and benefits Plaintiff would have received but for the IHRA violations, including but not limited to back pay, front pay, pre-judgment interest, and restoration of job assignments;

B. Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendant Sheriff's conduct;

C. A permanent injunction enjoining Defendant Sheriff or his agents from engaging in the practices complained of herein;

D. A permanent injunction requiring that Defendant Sheriff adopt employment practices and policies in accord and conformity with the requirements of the IHRA;

E. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F. An award of reasonable attorneys' fees, costs, and litigation expenses; and

G. Such other relief as the Court may deem just or equitable.

## <u>COUNT IV</u>

### (42 U.S.C. § 1983 Based on Retaliation under the ADA against all Defendants)

85. Plaintiff realleges and incorporates by reference all other paragraphs of this

complaint as if fully set forth herein.

20

86. Defendants intentionally retaliated against Plaintiff for seeking accommodations pursuant to the ADA.

87. Defendants retaliated against Tate for filing a prior lawsuit based on, *inter alia*, disability discrimination and failure to accommodate under the ADA.

88. Defendants refused and failed to protect Plaintiff from retaliation by employees in the Sheriff's Office, who caused the demotion from Lieutenant to Sergeant in retaliation for his exercising rights under Title VII, the ADA, and Illinois' disability laws.

89. Defendants have engaged in a policy, pattern, and practice of retaliating against and condoning retaliation against employees seek accommodations pursuant to the ADA and who seek redress under federal and state disability laws.

90. By engaging in and condoning retaliatory conduct, Defendants violated the anti-retaliation provisions of the ADA and the IHRA, as well as the First Amendment.

91. Defendants' conduct caused Plaintiff damages, including but not limited to: emotional pain and suffering, humiliation, degradation, inconvenience, lost benefits, loss of job advancement, future pecuniary losses, attorneys' fees and expenses, and other consequential damages.

WHEREFORE, Plaintiff respectfully requests:

A.  All benefits Plaintiff would have received but for the retaliation, including pre-judgment interest;

B.  Compensatory damages in an amount to be determined at trial;

C.     A permanent injunction enjoining Defendant from engaging in the retaliatory practices complained of herein;

D.     A permanent injunction requiring the Defendant to adopt employment practices and policies in accord and conformity with the requirements of the ADA, IHRA, and the First Amendment;

E.     A declaratory judgment that Defendants' actions violate the ADA, IHRA, and the First Amendment;

F.     That this Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein and is determined to be in full compliance with the law;

G.     Punitive damages against Defendant Dart in his individual capacity;

H.     An award of reasonable attorneys' fees, costs, and litigation expenses; and

I.     Such other relief as the Court may deem just or equitable.

## <u>COUNT V</u>

**(Retaliation in Violation of 42 U.S.C. § 1983 Based on the First Amendment for Filing a Lawsuit against Defendants Dart, Concholla, Reierson and Burke)**

92. Plaintiff realleges and incorporates by reference all other paragraphs of this complaint above as if fully set forth herein.

93. Plaintiff engaged in protected First Amendment activity by seeking redress of ADA- and Title VII-related grievances through the EEOC and the courts in 2014 and 2015.

94. Defendants Concholla, Reierson, and Burke intentionally retaliated against

Plaintiff for seeking accommodations pursuant to the ADA, and for engaging in protected conduct and speech under the First Amendment by filing the EEOC charge 440-2014-00204 and his corresponding lawsuit in 2014 and 2015.

95. Defendants Concholla, Reierson, and Burke were aware of Plaintiff's First Amendment protected activity.

96. Defendants Concholla, Reierson, and Burke retaliated against Tate for Tate's engagement in First Amendment-protected activity by failing and/or refusing to engage in a meaningful interactive dialogue with him regarding a reasonable accommodation in a Lieutenant assignment, and by demoting him to Sergeant without cause and without interactive dialogue.

97. Defendant Dart refused and/or failed to protect Plaintiff from retaliation by employees in the Sheriff's Office, namely, Defendants Reierson and Concholla, who harassed and threatened Tate by advising that his Sergeant position could not be protected after he filed accommodation requests as a Lieutenant.

98. Defendants have engaged in a policy, pattern, and practice of retaliating against and condoning retaliation against employees seek accommodations pursuant to the ADA and who seek redress under Illinois' disability laws.

99. By engaging in and condoning retaliatory conduct, Defendants violated the First Amendment.

100.     Defendants' conduct caused Plaintiff damages, including but not limited to:

emotional pain and suffering, humiliation, degradation, inconvenience, lost benefits, loss of job advancement, future pecuniary losses, attorneys' fees and expenses, and other consequential damages.

WHEREFORE, Plaintiff respectfully requests:

A. All benefits Plaintiff would have received but for the retaliation, including pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial;

C. A permanent injunction enjoining Defendant from engaging in the retaliatory practices complained of herein;

D. A permanent injunction requiring the Defendant to adopt employment practices and policies in accord and conformity with the requirements of the ADA, IHRA, and the First Amendment;

E. A declaratory judgment that Defendants' actions violate the ADA, IHRA, and the First Amendment;

F. That this Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein and is determined to be in full compliance with the law;

G. Punitive damages against Defendant Dart in his individual capacity;

H. An award of reasonable attorneys' fees, costs, and litigation expenses; and

I. Such other relief as the Court may deem just or equitable.

## COUNT VI

**(Indemnification of all Defendants by Defendant Cook County**

**under 745 ILCS § 10/9-102)**

101.     Plaintiff realleges and incorporates by reference all other paragraphs of this complaint above as if fully set forth herein.

102.     Illinois statute provides that a local public entity such as Defendant Cook County is obligated to assume financial responsibility for the actions committed by its officials or employees, such as Defendant Thomas J. Dart and the other individual Defendants hereto.  *See* 745 ILCS §§ 10/1-202, 10/2-302, and 10/9-102.

WHEREFORE, Plaintiff respectfully requests:

A.  Defendant Cook County be directed to pay, indemnify, and assume financial responsibility for the actions and/or omissions committed by Defendants Dart, Reierson, Concholla, and Burke, and make Plaintiff Tate whole in all ways for harms caused by the Defendants.

**JURY DEMANDED**

Respectfully submitted,

**LARRY TATE**

*s/Cass T. Casper*

_____

Plaintiff's Attorney
*Electronically filed on December 11, 2017*

Cass T. Casper (ARDC # 6303022)
TALON LAW, LLC
1153 West Lunt Avenue, #253

Chicago, Illinois 60626
Phone:  (312) 351-2478
Fax: (312) 276-4930
E-mail:  ctc@talonlaw.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies and states that the attached documents were served on the designated attorneys by electronic service via the Court's ECF System, and by electronic mail as indicated below, on December 11, 2017.

Kevin Frey kevin.frey@cookcountyil.gov

*s/Cass T. Casper*

_____

Cass T. Casper

26