UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| LARRY TATE, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 17 C 8888 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| THOMAS J. DART, et al. | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Larry Tate, a correctional officer with the Cook County Sheriff's office, alleges that his employer discriminated against him on the basis of his disability and retaliated against him after he brought a suit for discrimination.[1] R. 1, Compl.[2] Tate filed a six-count complaint against Cook County, the Sheriff of Cook County, Thomas Dart, and three other employees of the Cook County Sheriff's Office (the Defendants). *Id.* Tate has sued the individual employees in both their official and individual capacities. *Id.* at 1. The Defendants now move to dismiss Count Four of the Complaint, a § 1983 claim for retaliation under the ADA against all the Defendants. R. 16, Mot. Dismiss. The Defendants argue that § 1983 is not a proper vehicle to bring an action under the ADA and that there is no individual liability under the ADA. *Id.* ¶¶ 3-4. For the reasons explained below, the motion is granted.

---

[1]This Court has subject matter jurisdiction over the federal claims in this case under 28 U.S.C. §§ 1331 and 1343. It has supplemental jurisdiction over the Illinois law claim under 28 U.S.C. § 1367.

[2]Citations to the docket are indicated by "R." followed by the docket entry and page or paragraph number.

## I. Background

For the purposes of this motion, the Court accepts as true the allegations in the Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Tate has worked as a correctional officer for Cook County since 2007. Compl. ¶ 6. In 2010, Tate suffered a back injury at work, which required surgery and months of rehabilitation. *Id.* ¶ 24. He did not return to work until the spring of 2012 but was promoted to Sergeant in October 2012. *Id.* ¶¶ 24-25. Tate alleges that, following his promotion, the Sheriff assigned him to a position that required him to lift 55 to 60 pounds, a condition that violated the medical restrictions placed on him after his injury. *Id.* ¶ 26. Tate later asked for a reassignment and was transferred to the Division 5 lobby, but he was not given any training for the new position. *Id.*

Tate was initially permitted to work up to four hours of overtime in his new position in Division 5. Compl. ¶ 27. But after he requested training in December 2012, he was told he was not allowed to work overtime because he had a disability. *Id.* ¶¶ 27- 28. As a result, Tate filed a federal complaint for disability discrimination in June 2014, which settled in October 2015. *Id.* ¶ 29.

According to Tate, immediately following the settlement, the Sheriff transferred him again—this time to the Classification unit within the receiving area of the Jail—because, according to the Sheriff, a Sergeant was no longer needed in the Division 5 lobby. Compl. ¶ 30. About two weeks later, though, a different non-disabled Sergeant was assigned to the Division 5 lobby. *Id.* ¶ 32. Several months later, in December 2016, Tate was promoted to Lieutenant. *Id.* ¶ 34. Nonetheless, he was soon

notified that he needed to attend a meeting with some of his supervisors and provide medical clearance in order to continue work as a Lieutenant. *Id.* ¶ 35. During the meeting, his supervisors explained that all newly promoted Lieutenants would be assigned to Divisions IX or X, two high-conflict areas within Cook County Jail. *Id.* ¶ 38. Because the areas were considered high conflict, Tate needed to obtain full medical clearance. *Id.*

On December 14, 2016, Tate provided his list of permanent restrictions from his treating physician to his supervisors. *Id.* ¶ 39. The next day, Tate's supervisors informed him that he was unable to perform the essential functions of his position and he needed to fill out a reasonable-accommodation request form, but also that avoidance of violent situations was not a reasonable accommodation for a Correctional Lieutenant. *Id.* ¶ 40. Tate later found out that other newly promoted Lieutenants were assigned positions outside of Divisions IX or X. *Id.* ¶¶ 42-43. On December 27, 2016—after he filled out his reasonable-accommodation request form and attended another meeting with his supervisors—Tate was dismissed as a Correctional Lieutenant. *Id.* ¶¶ 44, 48, 49, 51.

In March 2017, Tate filed a charge of discrimination with the Illinois Department of Human Rights; the charge was cross filed with the Equal Employment Opportunity Commission (EEOC). Compl. ¶ 17. He alleged discrimination based on his disabilities and retaliation for engaging in protected activity. *Id.*; R. 1.1, 3/4/2017 Charge of Discrimination with Illinois Department of Human Rights. After receiving a right-to-sue letter, Tate filed this six-count complaint against Cook County, the

Cook County Sheriff, and other employees of the Cook County Sheriff's office for violations of the Americans with Disabilities Act (ADA), violations of the Illinois Human Rights Act (IHRA), indemnification by Cook County, and violations of the First Amendment and the retaliation provision of the ADA under 42 U.S.C § 1983. R. 20, Pl.'s Resp. at 1.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations.

4

speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

Count Four of Tate's complaint brings a novel claim. He seeks to use § 1983 to hold the Defendants liable for retaliation under the ADA, rather than bringing a direct claim for retaliation under the statute. Section 1983 "authorizes suits to enforce individual rights under federal statutes as well as the Constitution" against state and local government officials. *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 119 (2005). Section 1983 does not create substantive rights but operates as "a means for vindicating federal rights conferred elsewhere." *Padula v. Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011) (cleaned up).

The Supreme Court, though, has repeatedly held that §1983 cannot be used to circumvent a congressionally created remedial scheme within another statute. *See Rancho Palos Verdes*, 544 U.S. at 121-23 (explaining that §1983 could not be used to bring a claim for rights conferred under the Telecommunications Act because the Act limited the relief available to private individuals and provided for expedited judicial review); *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981) (holding that §1983 could not be used to bring claims for violations of the Federal Water Pollution Control Act or the Marine Protection, Research, and Sanctuaries Act of 1972 because both "provide quite comprehensive enforcement mechanisms").

5

Here, the Defendants assert that the ADA provides a comprehensive remedial scheme that precludes any § 1983 action. They cite *Tri-Corp Hous. Inc., v. Bauman*, 826 F.3d 446 (7th Cir. 2016), and argue that the case makes clear that § 1983 cannot be used to "override private actions set forth" in the ADA. Mot. Dismiss ¶ 3. The Defendants are not wrong—Tate's § 1983 claim does have to be dismissed—but they oversimplify the impact of *Bauman* on the facts here. The plaintiff in *Bauman* tried to use § 1983 to sue an individual—a city alderman—for discrimination under the ADA, but the Seventh Circuit upheld the district court's dismissal of the suit because the ADA "specif[ies] in detail who may be sued for damages, and using § 1983 to override the limits of those statutory lists is unwarranted." *Id.* at 449. *Bauman* held only that (1) § 1983 cannot be used to bring an action under a statute that includes a comprehensive remedial scheme and (2) the ADA includes a comprehensive remedial scheme for claims of *discrimination*, without directly addressing whether retaliation claims are precluded.

Tate argues that—even if the ADA includes a comprehensive remedial scheme for claims of discrimination under 42 U.S.C. § 12112—it lacks one for *retaliation* claims under 42 U.S.C § 12203, because courts are split on whether both compensatory and punitive damages are available to plaintiffs when suing under that provision. Pl.'s Resp. at 6. But Tate cites no authority to support his assertion that a statutory provision must provide for all manner of damages for all similar claims in order to be classified as a comprehensive remedial scheme. Indeed, the Supreme Court has set forth a different definition: a statue is considered to have a remedial

6

scheme sufficient to preclude § 1983 actions if it provides comprehensive enforcement mechanisms that include citizen-suit provisions, as well as notice provisions requiring plaintiffs to alert the requisite agency, the State, and the alleged violator before filing suit. *Sea Clammers*, 453 U.S. at 6; *see also Rancho Palos Verdes*, 544 U.S. at 121 ("The provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983.").

Section 12203(c) includes provisions of this nature. The text of the provision explains that the same remedies and procedures available under 42 U.S.C. § 12117 for enforcement of the ADA's discrimination provision shall be used to enforce the retaliation provision, including submission of claims to the EEOC, notification to the State, and the requisite deadlines for filing a civil action. 42 U.S.C. § 12203(c); 42 U.S.C. § 12117; 42 U.S. Code § 2000e–4; 42 U.S. Code § 2000e–5. Even if, as Tate argues, it is not clear that the compensatory and punitive damages are available for a retaliation claim, Tate develops no argument that the availability of backpay and front pay (as well as attorneys' fees) undermines what is otherwise an express cause of action and a comprehensive remedial scheme.

Tate also insists that individual-liability for ADA retaliation would not really expand the ADA remedial scheme. According to Tate, § 12203(a) "clearly specifies that individuals are liable for engaging in retaliation" when it states that "[n]o person" shall retaliate. Pl.'s Resp. at 4. But the Seventh Circuit has held otherwise. *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303,* 783 F.3d 634, 644 (7th Cir. 2015)

7

(explaining that the district court was "correct to dismiss [the defendants] in their individual capacity for the discrimination and retaliation claims arising directly under the Rehabilitation Act and the ADA."); *see also Ortega v. Chi. Pub. Sch. of the Bd. of Educ. of the City of Chicago*, 2015 WL 4036016, at *1, n. 2 (N.D. Ill. June 30, 2015). So invoking § 1983 to add *individual* liability for ADA retaliation indeed would be a step beyond the remedies provided by the ADA. More importantly, Tate provides no reason to believe that the ADA's comprehensive remedial scheme leaves room for enforcement of the ADA via § 1983.

Finally, Tate argues that a recent Second Circuit case—*Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72 (2d Cir. 2015)—saves Count Four. But *Vega* does not support Tate's application of § 1983. The plaintiff in *Vega* brought a claim for retaliation under the equal protection clause of the Constitution. *Id*. at 80-82. The Second Circuit overturned the district court's dismissal of the claim because retaliation was a form of discrimination under the Equal Protection Clause, and § 1983 was the proper vehicle to bring a private action for the deprivation of rights conferred by the *Constitution. Id.* at 82. Count Four of Tate's Complaint does not employ § 1983 to bring a claim under the Constitution. It instead employs the statute to bring a claim under the ADA.[4] Accordingly, *Vega* provides no help to Tate, and Count Four cannot survive.

---

[4]Count Four is titled "42 U.S.C § 1983 Based on Retaliation under the ADA against all Defendants." Compl. at 20. It is true that Paragraph 90 of the Complaint, located within the allegations comprising Count Four, states that the Defendants "violated the anti-retaliation provisions of the ADA and the IHRA, as well as the *First Amendment.*" *Id.* ¶ 90 (emphasis added). But Plaintiff's response brief accepts the Defendants' position that Count

8

## IV. Conclusion

For the reasons discussed, the Defendants' motion to dismiss Count Four of Tate's Complaint is granted.

ENTERED:

       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 14, 2019

---

Four seeks damages only for retaliation under the ADA; nowhere does the response brief mention retaliation under the IHRA or the First Amendment. *See* Pl.'s Resp. So, the Court has treated Count Four as limited to retaliation under the ADA. It is worth noting that any claim Tate might bring under § 1983 for violations of the IHRA—a state law—would likewise be dismissed. *West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States…"). And a claim for retaliation under the First Amendment would be entirely duplicative of Count Five of Tate's complaint, titled "Retaliation in Violation of 42 U.S.C. § 1983 Based on the First Amendment." Compl. at 22.