## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LARRY TATE,

    Plaintiff,

        v.

THOMAS J. DART, *et al.*,

    Defendants.

No. 17-cv-08888

Judge John F. Kness

### MEMORANDUM OPINION AND ORDER

Defendants (Cook County, its Sheriff, and three county jail administrators) refused to promote Plaintiff (a correctional officer at the jail) to a lieutenant's position so long as he insisted on avoiding frequent inmate contact and situations with a chance of violence or conflict. Finding Defendants' position unacceptable, Plaintiff brought this action under the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.*, 42 U.S.C. § 1983, and the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* (Dkt. 1.) Plaintiff contends he could have performed the duties of a lieutenant had Defendants accommodated him by assigning him to a lieutenant post that did not involve frequent interaction with inmates. (*Id.*) Plaintiff further claims that Defendants' decision not to promote him was retaliatory for his having filed an earlier EEOC claim and ADA lawsuit against them. (*Id.*) Before the Court are the parties' cross motions for summary judgment. (Dkt. 80 (Defendants' motion); Dkt. 103 (Plaintiff's motion).)

As explained below, Plaintiff's proposed accommodation would have required Defendants to waive an essential function of the lieutenant position—*i.e.*, responding to emergencies and using force when necessary—which neither the ADA nor the IHRA require Defendants to do. Plaintiff has also failed to present sufficient evidence to create a triable issue as to whether Defendants' decision was retaliatory. Accordingly, Plaintiff's motion is denied, and Defendants' motion is granted.

## I.    FACTUAL BACKGROUND

At the summary judgment stage, the Court views the facts in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). That said, nonmoving parties offering factual assertions in defense of their claim must support those assertions with evidence and may not rely on allegations in their complaint. *Estate of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017). The following recitation of facts reflects these principles.

The Cook County Sheriff's office hired Plaintiff as a correctional officer in 2007. (Dkt. 1 ¶ 6.) Plaintiff was eventually promoted to a sergeant's position. (DSOF ¶ 41; Pltf. Resp. DSOF ¶ 47.)[1] Then, in 2014, Plaintiff sued Cook County, alleging failure to accommodate his disabilities, which include an injured disk in his back that makes

---

[1] The Court adopts the following citation conventions: Dkt. 79, Defendants' Rule 56 Statement, is hereinafter "DSOF"; Dkt. 80, Defendants' Motion for Summary Judgment, is "Def. Mot."; Dkt. 90, Plaintiff's Response to Defendants' Rule 56 Statement, is "Pltf. Resp. DSOF"; Dkt. 96, Plaintiff's Rule 56 Statement, is "PSOF"; Dkt. 103, Plaintiff's Cross-Motion for Summary Judgment and Response to Defendants' Motion for Summary Judgment, is "Pltf. Resp. & Cross-Mot."); Dkt. 109, Defendants' Response to Plaintiff's Rule 56 Statement, is "Def. Resp. PSOF"); Dkt. 110, Defendant's Response to Plaintiff's Cross-Motion and Reply in Support of Motion for Summary Judgment, is "Def. Reply & Resp. to Pltf. Cross-Mot."); Dkt. 115, Plaintiff's Reply in Support of Motion for Summary Judgment, is "Pltf. Reply".

it difficult for him to lift heavy objects or stay on his feet for long periods of time. (*Id.*; PSOF ¶ 40; Def. Resp. PSOF ¶ 40; Dkt. 79-3, Pltf. Dep., at 67:22-68:13; Dkt. 79-9 at 1.) As part of the settlement of that lawsuit, the parties agreed that Plaintiff would be allowed to "avoid situations in which there is a significant chance of violence or conflict." (DSOF ¶ 32; Pltf. Resp. DSOF ¶ 32.) Plaintiff then accepted a position as a sergeant in the classification department, which did not require much interaction with detainees. (DSOF ¶ 34; Pltf. Resp. DSOF ¶ 34.)

In 2015, Plaintiff passed the lieutenant's examination and was certified as eligible for promotion by the Cook County Sheriff's Merit Board. (DSOF ¶ 26; Pltf. Resp. DSOF ¶ 26.) After waiting his turn on the promotion list, Plaintiff was promoted to lieutenant on December 9, 2016. (DSOF ¶ 31; Plts. Resp. DSOF ¶ 31.) The elevation to lieutenant was provisional and subject to a one-year probationary period, completion of training, and medical clearance. (*Id.*) On the same day he was promoted, Plaintiff met with Defendant Sabrina Concholla, the jail's ADA compliance officer. (DSOF ¶ 35; Pltf. Resp. DSOF ¶ 35.) Although the parties disagree regarding Concholla's exact words, they agree that she told Plaintiff he would not be able to perform the essential functions of the lieutenant position if he were unable to make contact with inmates and use force when necessary. (*Id.*; *see also* Dkt. 79-12.)

Ten days later, Plaintiff informed Defendants that he had not cleared medical review because it remained necessary for him to "avoid situations in which there is a significant chance of violence or conflict." (DSOF ¶ 37; Pltf. Resp. DSOF ¶ 37.) Defendant Rebecca Reierson, the jail's Human Resources officer, responded by email

that, although it was possible to avoid violent situations as a sergeant, it would not be possible as a lieutenant. (Dkt. 79-13.) Specifically, she stated that the lieutenant position "requires [lieutenants to] assist and oversee Correctional Officers and Sergeants when conflicts and disruptive behaviors arise." (*Id.*) Moreover, lieutenants needed to be able to "respond to incidents that require use of force" and "manage situations that involve both conflict and violence." (*Id.*) She therefore determined that, "[b]ased on our review of your restrictions, you are unable to perform the essential functions of a Correctional Lieutenant." (*Id.*) She invited Plaintiff to submit "a reasonable accommodation" that might allow him to perform the essential functions of the position. (*Id.*) But she noted that "avoidance of situations involving violence or conflict is not a reasonable accommodation for Correctional Lieutenants." (*Id.*)

The same day Reierson emailed Plaintiff, December 19, 2016, she also met with him, along with Concholla and Kieran Mundt, the jail lieutenants' Chief Union Steward. (Dkt. 79-7, Mundt Dep., at 66:11-21; 67:24-68:1.) Plaintiff suggested that he could avoid violent situations as a lieutenant if he were assigned to the records department or some other posting where contact with detainees was infrequent. (Pltf. Resp. DSOF ¶ 44.) Reierson provided Plaintiff with an accommodation request form, which Plaintiff completed. (DSOF ¶ 39; Pltf. Resp. DSOF ¶ 39.) He wrote that he had a "50-60 lb lifting restriction" and could not abide "prolonged standing / walking";

consequently, Plaintiff asked to "avoid frequent inmate contact" or "situations involving significant chance of violence." (Dkt. 79-10.)

On December 27, 2016, Reierson denied Plaintiff's request and reiterated that avoiding inmate contact or situations presenting a significant chance of violence was not a reasonable accommodation. (Dkt. 79-14.) She also noted that the positions Plaintiff believed required less inmate interaction still required some interaction, and that all lieutenant positions required the ability to respond to emergencies. (*Id*.)

On January 5, 2017, Plaintiff's attorney wrote a letter to Reierson requesting a formal disposition of Plaintiff's case. (Dkt. 79-1 at 40:5-20.) Three weeks later, on January 26, 2017, Reierson informed Plaintiff that his accommodation request was denied and that he would be returned to the rank of sergeant. (DSOF ¶ 46; Pltf. Resp. DSOF ¶ 46.) Although Reierson informed Plaintiff of the decision, Plaintiff contends Defendant Matthew Burke, the Cook County Department of Corrections Chief of Staff, made the final decision to demote him. (Dkt. 1 ¶¶ 14-15.)

## II.    PROCEDURAL HISTORY

On March 13, 2017, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights and cross-charge with the Equal Employment Opportunity Commission. (Dkt. 1 ¶ 17.) Plaintiff received a right to sue letter on November 8, 2017 stating that more than 180 days had elapsed since the EEOC assumed jurisdiction over his charge and no suit based on that charge had been filed by the Department of Justice. (Dkt. 1-1 at 5.) Plaintiff then filed this action on

December 11, 2017. (Dkt. 1 ¶ 20.)[2] The Complaint includes six counts: (1) disability discrimination in violation of the American With Disabilities Act, 42 U.S.C. §§ 12101-12213, against Defendant Thomas J. Dart, the Sheriff of Cook County; (2) failure to accommodate in violation of the American With Disabilities Act, 42 U.S.C. §§ 12101-12213, against Dart; (3) violation of the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.*, against Defendant Dart; (4) violation of Plaintiff's ADA rights under 42 U.S.C. § 1983, against all Defendants; (5) violation of Plaintiff's First Amendment rights pursuant to 42 U.S.C. § 1983, against all Defendants; and (6) indemnification under 745 ILCS § 10/9-102, against Defendant Cook County. (*Id.* ¶¶ 57-102.)

On March 5, 2018, Defendants moved to dismiss Count Four (violation of Plaintiff's ADA rights in violation of Section 1983). (Dkt. 16.) By the previously assigned judge, the Court granted that motion on March 14, 2019. (Dkt. 63.) After ample time for discovery, the parties presented fully briefed cross-motions for summary judgment. (*See* Dkts. 79, 80, 90, 96, 103, 109, 110, 115.)

## III. STANDARD OF REVIEW

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

---

[2] Defendants have not challenged whether Plaintiff exhausted his administrative remedies, nor whether this suit was timely brought.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the nonmoving party. *Scott*, 550 U.S. at 378. The Court will not weigh the evidence or make credibility determinations, as those functions are reserved for the trier of fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011). But "[a]s the 'put up or shut up' moment in a lawsuit, summary judgment requires a [nonmoving] party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted).

## IV. DISCUSSION

Plaintiff brings two types of claims: (1) ADA and IHRA claims for failure to accommodate; and (2) Section 1983 claims for retaliation against protected First Amendment activity.[3] In his summary judgment briefing, however, Plaintiff requests that, if the Court is inclined to enter summary judgment as to his Section 1983 retaliation claim, the Court should grant him "leave to amend to convert it into a straightforward ADA retaliation claim." (Dkt. 103 at 29.) Plaintiff offers that this change in legal theory "could be done without changing the substance of the count whatsoever" because "the allegations supporting the claim are identical under ADA

---

[3] Plaintiff also brings a claim for indemnification against Cook County. (Dkt. 1 ¶¶ 101-02.) That claim requires Plaintiff to successfully prosecute an underlying claim. *See Kailin v. Metcalf*, No. 19 C 4703, 2020 WL 1139259, at *1 (N.D. Ill. Mar. 9, 2020). Because this opinion disposes of Plaintiff's underlying claims, the Court must enter summary judgment as to his indemnification claim as well. *Id.* For the same reason, the Court grants summary judgment as to any *Monell* claim or any claim for punitive damages. (*See* Def. Mot. at 14-16.)

or First Amendment." (*Id.* at 29-30 (citing *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("[S]pecifying an incorrect theory is not a fatal error")).)

Because Plaintiff has declared that he has no intention of changing the substance of his allegations, there is no reason (or need) for him to amend his complaint. Instead, the Court will construe Plaintiff's retaliation claims using both the ADA and First Amendment rubrics. *See Rabe*, 636 F.3d at 872 (instructing district court on remand to analyze complaint under breach of contract and promissory estoppel theories even though the complaint did not identify those theories by name). That is simple here, as the retaliation analysis is the same under either rubric. *See Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (Title VII and ADA retaliation provisions are nearly identical and courts may consider cases decided under either provision interchangeably); *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (courts generally use the same standard to review constitutional retaliation claims and Title VII retaliation claims).

## A. Failure to Accommodate Claims

To prevail on his ADA failure to accommodate claim,[4] Plaintiff must show that he "[1] has a disability, that [2] []he is 'otherwise qualified' for the job, and that [3] h[is] employer refused to make a 'reasonable accommodation' for h[is] disability." *Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 895-96 (7th Cir. 2003) (quoting

---

[4] An IHRA claim for disability discrimination "is analyzed under the same framework as an ADA claim." *Winkfield v. Chicago Transit Auth.*, 435 F. Supp. 3d 904, 909 (N.D. Ill. 2020); *see also McKay v. Vitas Healthcare Corp. of Ill.*, 232 F. Supp. 3d. 1038, 1043 (N.D. Ill. 2017) (analyzing IDA and IHRA counts together for the purpose of summary judgment). The Court therefore considers Plaintiff's ADA and IHRA claims together.

42 U.S.C. § 12112(a)). To be "otherwise qualified" for a position, an employee must be able to "perform the 'essential functions' of [the] position, with or without a reasonable accommodation." *Vargas v. DeJoy*, 980 F.3d 1184, 1188 (7th Cir. 2020) (quoting 42 U.S.C. § 12111(8)); *Alamo v. City of Chicago*, No. 12-CV-4327, 2021 WL 633355, at *8 (N.D. Ill. Feb. 18, 2021) (same rule applies under IHRA). Importantly, the burden is on Plaintiff to identify an accommodation that allows him to accomplish the essential functions of the position. *Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 507 (7th Cir. 2020).

Plaintiff proposed that Defendants accommodate him by ensuring that he would be able "to avoid situations involving [a] significant chance of violence." (PSOF ¶ 47.)[5] Defendants contend that this was not a reasonable accommodation because responding to emergencies and "diffusing" [*sic*; this usage comes from the relevant job description] violent situations with the use of force are essential functions of the lieutenant position. (Def. Mot. at 6-7; Def. Reply & Resp. to Pltf. Cross-Mot. at 5-6.) Defendants argue that granting Plaintiff's request to avoid frequent inmate contact

---

[5] In Plaintiff's briefing, Plaintiff repeatedly states that Defendants should have accommodated Plaintiff by assigning him to "Classification, Records, Laundry, Kitchen, Sanitation, [or] External Operations[.]" (Pltf. Cross Mot. at 9, 19, 22-24; PSOF ¶¶ 13, 20.) Plaintiff does not, however, argue (or provide any evidence that suggests) that he proposed those assignments as an accommodation during the interactive process. In fact, the only accommodation Plaintiff proposed at that time was that he be allowed to "avoid frequent inmate contact" or "situations involving significant chance of violence." (Dkt. 79-10.) The Court considers only the accommodations Plaintiff actually proposed to Defendants at the time Plaintiff made his request to accommodate, not the accommodations Plaintiff proposes now. *See Braddock v. United Parcel Serv., Inc.*, No. 1:14-CV-03839, 2017 WL 770973, at *5 (N.D. Ill. Feb. 28, 2017) ("Plaintiff did not propose this accommodation until the summary judgment phase, which is too late") (citing *Stinson v. W. Suburban Hosp. Med. Ctr.*, No. 97-cv-3701, 1998 WL 188938, at *6 (N.D. Ill. Jan. 21, 1998) ("suggestions as to accommodations an employer might have made cannot be offered at the summary judgment stage to prove a failure to accommodate")).

and situations with a chance of violence or conflict would mean waiving those essential functions, which the ADA does not require. *See Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017) ("An inability to do the job's essential tasks means that one is not 'qualified'; it does not mean that the employer must excuse the inability") (quoting *Byrne v. Avon Prods.*, 328 F.3d 379, 381 (7th Cir. 2003)). Plaintiff responds that "responding to emergency situations, and . . . diffusing [*sic*] or disrupting violent situations regarding inmates with de-escalation or use of force, are <u>not</u> essential job functions." (Pltf. Resp. & Cross-Mot. at 7.)

Plaintiff has not created a genuine dispute of material fact as to whether responding to emergency situations and violent situations are essential functions of the lieutenant position. Whether a function is essential is a question of fact. *Tonyan v. Dunham's Athleisure Corp.*, 966 F.3d 681, 687 (7th Cir. 2020). To answer it, the Court "consider[s] the employer's judgment, including written job descriptions, as evidence." *Id*. The Court also "examine[s] the impact of not requiring the employee to perform the function." *Vargas*, 980 F.3d at 1188 (citing *Tonyan*, 966 F.3d at 688). Crucially, the Court will not "second-guess the employer's judgment on this call, though [the Court's] deference is not absolute." *Id*. (citing *Tonyan*, 966 F.3d at 687-88, *DePaoli v. Abbott Lab'ys*, 140 F.3d 668, 674 (7th Cir. 1998)).

To establish the essential functions of the correctional lieutenant position, Defendants offer the job description, which states that the "Key Responsibilities and Duties" include "Diffuses [perhaps 'defuses' was intended] and controls disruptive behavior by appropriate use of physical force" and "Responds to emergency situations

10

according to facility procedures, such as medical, fire, security, etc." (DSOF ¶ 12 Pltf. Resp. DSOF ¶ 12.) By way of example, Defendants point to a raft of physical altercations between lieutenants and inmates. (*See, e.g.*, DSOF ¶¶ 23-24.) Defendants also observe that the Seventh Circuit has held that disrupting violent situations and responding to emergencies are essential functions of entry-level correctional officer positions. (*See* Def. Mot. at 10 (citing *Dargis v. Sheahan*, 526 F.3d 981, 988 (7th Cir. 2008), *Miller v. Ill. Dep't of Corrections*, 107 F.3d 483, 485 (7th Cir. 1997)).) Defendants ask this Court to reach the same holding as to the correctional lieutenant position. (*Id*.)

In response, Plaintiff denies that the written job description provides "an accurate account of the actual, day-to-day job duties of Correctional Lieutenants." (PSOF ¶ 11; *id*. ¶ 30 ("The job description is not accurate").) Plaintiff supports this by pointing to several examples of correctional lieutenants who he says held the position without engaging in any physical altercations. (*Id*. ¶¶ 22-23, 26.) According to Plaintiff, these lieutenants avoided confrontations with inmates because correctional lieutenants, unlike entry-level correctional officers, bid into "stable" assignments, certain of which require only infrequent contact with inmates. (*See* Pltf. Resp. & Cross-Mot. at 10.) If, Plaintiff says, Defendants placed him in the right assignment, he could perform enough of the other duties of the job such that excusing him from using force would be reasonable. (*Id*. at 11 (citing *Dargis*, 526 F.3d at 986 ("if an employer has a legitimate reason for specifying multiple duties for a particular job classification, duties the occupant of the position is expected to rotate through, a

disabled employee will not be qualified for the position unless he can perform enough of these duties to enable a judgment that he can perform its *essential* duties")).)

In the Court's view, there is no genuine dispute as to whether "responding to emergency situations" and "disrupting violent situations" are essential functions of the correctional lieutenant position. (Def. Mot. at 6-7; Pltf. Resp. & Cross-Mot. at 7.) Defendants' judgment on this issue is entitled to deference. *Vargas*, 980 F.3d at 1188. In *Miller*, the Seventh Circuit deferred to the Illinois Department of Corrections and held, because responding to prison riots was an essential function, IDOC was not required to accommodate a blind applicant to an entry-level correctional officer position:

> The prison has to be able to call upon its full staff of correctional officers for help in putting down a prison riot, and therefore each officer must have experience in the positions, such as searching and escorting inmates, that provide the necessary training and experience for responding effectively to a riot, as well as the capability for such response. It would not do to have a correctional officer whose only experience and capability were in operating a telephone switchboard or issuing weapons.

107 F.3d at 485. Eleven years later, in *Dargis v. Sheahan*, the Seventh Circuit reiterated *Miller* and held that the Cook County Sheriff was not required to grant a disabled officer's request that he not be required to interact with inmates. *Dargis*, 526 F.3d at 987-88 & n. 6 (emphasizing "the difficulty, if not the impossibility, of attempting to accommodate" officers who seek to opt-out of inmate contact).

*Miller*, *Dargis*, and this case differ in that Plaintiff seeks to hold the correctional lieutenant position, while the plaintiffs in those cases were entry-level

officers. (*See* Pltf. Resp. & Cross-Mot. at 10.) Ultimately, however, the Court finds, for two reasons, that *Miller* and *Dargis* apply to the correctional lieutenant position.

*First*, the differences between the lieutenant and entry-level officer positions are not sufficient to render the ability to disrupt violent situations inessential to one but not the other. Jails are dangerous places; the "County" is especially so. Unlike medical, clerical, and legal staff, the primary purpose of correctional officers, including correctional lieutenants, is to mitigate that danger. (DSOF ¶ 11 ("The Lieutenant ensures the safety and security of inmates, staffs, and citizens through the enforcement of proper detention policies and procedures."); Pltf. Resp. DSOF ¶ 11.) Fulfilling this purpose means lieutenants may need to be physically present and active during violent and otherwise emergent situations. (*See, e.g.*, Dkt. 79-5, Rivero-Concholla Dep., at 102:20-24; *see also* Pltf. Resp. DSOF ¶¶ 22-24.) It may be that lieutenants are required to perform this function less often than entry-level officers, but Plaintiff concedes they must at least perform it on occasion. (*E.g.*, Pltf. Resp. DSOF ¶¶ 22-23.) Moreover, the entry-level correctional officers from which Plaintiff seeks to distinguish himself would report directly to Plaintiff as a correctional lieutenant. (DSOF ¶ 12; Pltf. Resp. DSOF ¶ 12.) Given these circumstances, as well as the potentially dire consequences of failing to respond to emergencies or disrupt violent situations, this Court is not equipped to second-guess whether lieutenants should be able to respond to emergencies and use force when necessary. *Cf. Vargas*, 980 F.3d at 1188 (courts must "examine the impact of not requiring the employee to

perform the function" and should not "second-guess the employer's judgment" regarding whether the function is essential) (citing *Tonyan*, 966 F.3d at 688).

*Second*, the Court is not convinced that the stability of lieutenant assignments makes responding to emergencies and using force inessential functions. In support of this position, Plaintiff's cites examples of lieutenants who were given certain assignments and never used physical force during their tenure. (Pltf. Resp. & Cross-Mot. at 8 (citing PSOF ¶¶ 17, 46).) Plaintiff supposes that, were Defendants to give him the right position, he would "not have to respond to emergency situations or diffuse or disrupt violent situations, or at least only very rarely." (PSOF ¶ 13; *see also* Pltf. Resp. & Cross-Mot. at 9 (Plaintiff would be called upon to respond to emergencies "not more than extremely rarely").) In effect, then, Plaintiff demands that Defendants give him a low-inmate-contact assignment in the hope he never has to respond to an emergency or use force.

Defendants were no more required to accede to Plaintiff's demand than an airline would be required to give unqualified pilots the Miami to Orlando route in the hope they never hit bad weather. In this sense, *Vargas* is instructive. *See* 980 F.3d at 1188. In that case, a mail carrier with a 15-pound lifting restriction alleged that the postal service unreasonably declined to allow him to collect mail from boxes instead of delivering mail in bags. *Id.* at 1188-89. Disagreeing, the postal service explained that, per the relevant job description, carriers might be "required to carry mail weighing up to 35 pounds." *Id.* As a result, the plaintiff's inability to carry bags weighing more than 15 pounds rendered him incapable of performing an essential

function of the job. *Id*. At summary judgment, the district court "reasoned a mail carrier's load might not always weigh 35 pounds, so it's ambiguous whether the ability to carry such weight is an essential function of the job." *Id*.

Although it affirmed the district court's judgment, the Seventh Circuit disagreed concerning whether the ability to carry 35 pounds was an essential function. *Id*. On the contrary, the Court of Appeals explained that "[t]he amount of time devoted to a particular function is not relevant" because "an essential function need not encompass a majority of an employee's time, or even a significant quantity of time, to be essential." *Id*. (quoting *Basith v. Cook Cnty.*, 241 F.3d 919, 929 (7th Cir. 2001)). *Vargas* then analogized the mail carrier's duties to those of a firefighter:

> Consider the firefighter: while he may not often have to carry an unconscious adult from a burning building, failing to require that he ably perform this function when called upon would run counter to his duty to public safety. The same logic applies to [a mail carrier], though with less grave (hopefully) real-world ramifications. A mail carrier's lifting requirements are not optional. The consequence of being unable to lift, carry, or load heavy bundles and packages is simple though significant: the mail doesn't get delivered.

*Id*. (citation omitted). So too here. Lieutenants may seldom be called upon to engage with inmates physically, but the stakes are high when they are called.

Contrary to Plaintiff's view, that entry-level correctional officers may find themselves in physically demanding situations more often than lieutenants does not vitiate the need for lieutenants to be capable of handling such situations as well. Defendant seeks, in essence, to define the essential functions of a public-safety position by reference to probabilities. But that invitation ignores both binding law and experience; for example, nearly three-quarters of all police officers never

15

discharge their service weapons in the line of duty. *See* "A closer look at police officers who have fired their weapon on duty," available at https://www.pewresearch.org/fact-tank/2017/02/08/a-closer-look-at-police-officers-who-have-fired-their-weapon-on-duty/ (visited Aug. 23, 2021). But just because most police officers are not called upon to use a firearm does not mean that weapons proficiency for all is optional. In other words, that workplace emergencies might be infrequent does not render the *ability* to respond—even in the rare case—a disposable function.

This conclusion—grounded in contingent needs—is fatal to Plaintiff's failure-to-accommodate claims. Plaintiff's only proposed accommodation was that Defendants allow him "to avoid situations involving [a] significant chance of violence." (PSOF ¶ 47.) In effect, then, Plaintiff asked Defendants to waive an essential function of the position–*i.e.*, the ability to respond to emergencies and disrupt violent situations with the use of force. Because Plaintiff did not propose any other accommodation that would have enabled him to perform those functions, his failure to accommodate claim cannot proceed any further. *Cf. Williams*, 982 F.3d at 507 (plaintiff must identify accommodation that allows him to "accomplish the essential functions of his job.").

One final point requires attention. Plaintiff argues that, because Defendants were able to accommodate him at the sergeant level by placing him in the records department, Defendants should have been able to provide the same accommodation at the lieutenant level. (*See, e.g.*, Pltf. Cross-Mot. at 6, 9; Pltf. Resp. DSOF ¶ 44.) But as Defendants point out, this argument also fails: lieutenants are sometimes the

16

highest-ranking officers present in the jail, making it essential that lieutenants be able to respond in all areas. (*See* DSOF ¶ 15.) Even if the requirements of the sergeant and lieutenant positions were the same, however, courts have repeatedly held that the fact that an employer previously allowed an unreasonable accommodation "does not obligate them to continue providing such an accommodation." *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 26 (1st Cir. 2001) (citing *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1528 (11th Cir. 1997)). For this reason, as well as the others provided above, the Court holds that "avoid[ing] situations involving [a] significant chance of violence" (PSOF ¶ 47) was not an accommodation that Defendants were required by the ADA to provide.

### B.    Retaliation Claims

Plaintiff claims his demotion was retaliation for his filing of an EEOC charge and lawsuit against Defendants in 2014. (Dkt. 1 ¶¶ 92-99.) Plaintiff asserts this was a violation of his First Amendment rights, as protected by 42 U.S.C. § 1983, and his ADA rights under 42 U.S.C. § 12203. (*See* Dkt. 103 at 29.)[6] Defendants say summary judgment is proper as to these claims because "Plaintiff cannot show either [the EEOC charge or lawsuit] were motivating factors" in the decision to demote him. (Def. Mot. at 12.)

There are two "methods" for making a *prima facie* retaliation case: the "direct" method and the "indirect" method. *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). Using the direct method, Plaintiff must show: (1) he engaged in a protected activity;

---

[6] As noted above, the rubric for analyzing these claims is the same. *See* Section IV above (citing *Casna*, 574 F.3d at 427; *Baines*, 863 F.3d at 661).

(2) he suffered an adverse action; and (3) there is a causal connection between the two events. *Guzman v. Brown Cnty.*, 884 F.3d 633, 642 (7th Cir. 2018). The indirect method, on the other hand, requires the Plaintiff to emerge victorious from the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Lewis*, 909 F.3d at 866. Importantly, although the Court will distinguish between the direct and indirect method, the Court will not distinguish between direct and indirect evidence. *Ortiz v. Werner Enters.*, 834 F.3d 760, 765 (7th Cir. 2016). Rather, the standard "is simply whether the evidence would permit a reasonable factfinder to conclude that" retaliation "caused the discharge or other adverse employment action." *Id*. Because Plaintiff does not specify which method he is pursuing, the Court analyzes both.

> ### 1. *Direct Method*

Using the direct method, Plaintiff must show Defendants "would not have taken the[] adverse employment action[] but for his . . . protected activity; proof of mixed motives will not suffice." *Hillmann v. City of Chicago*, 834 F.3d 787, 795 (7th Cir. 2016) (quotations omitted). In other words, "retaliation must be a but-for cause of a materially adverse action, not merely a contributing factor." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 455 (7th Cir. 2011). Because of this, causality is "typically one of the highest hurdles retaliation plaintiffs must clear." *Benuzzi v. Bd. of Educ. of City of Chicago*, 647 F.3d 652, 665 (7th Cir. 2011). To judge whether a Plaintiff has cleared the causation hurdle at summary judgment, the Court looks to whether the Plaintiff has presented evidence of "suspicious timing, ambiguous statements of animus,

evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015).

Plaintiff has not created a triable issue regarding causation. Beginning with timing, a long interval between protected activity and adverse employment action "may weaken but does not conclusively bar an inference of retaliation." *Malin v. Hospira, Inc.*, 762 F.3d 552, 560 (7th Cir. 2014) But "[i]f the best a plaintiff can do is allege that he engaged in protected activity and then, years later, the employer took an adverse action against him, the claim may not be permitted to proceed." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). In this case, the interval between the protected conduct and the adverse action is about three years—a significant period. (*See* PSOF ¶¶ 35, 37, 40, 41, 47; Def. Resp. PSOF ¶¶ 35, 37, 40, 41, 47; Dkt. 79-3, Pltf. Dep., at 67:22-68:13; Dkt. 79-9; Dkt. 79-12.) Plaintiff's case is further undermined by Defendants' promotion of Plaintiff *after* he engaged in the protected conduct and *before* the alleged retaliation. *Cf. Meyer v. Nicholson*, 441 F. Supp. 2d 735, 743 (W.D. Pa. 2006) (employer's decision to increase plaintiff's duties after EEOC charge and before complained-of adverse employment decisions undermined plaintiff's theory that retaliation for the EEOC charge caused the adverse actions). Plaintiff's evidence of suspicious timing is weak.

Plaintiff's other evidence of retaliatory animus is likewise insufficient to create a genuine, triable issue. Plaintiff identifies three pieces of evidence: (1) Plaintiff's testimony that the file from his previous lawsuit was on the table when he met with

19

Concholla and Reierson (Pltf. Resp. & Cross-Mot. at 28); (2) examples of other correctional officers whom Defendants permitted to work with medical restrictions (*id.* at 28-29); and (3) Burke's deposition testimony regarding whether he knew about Plaintiff's previous EEOC claim (Plaintiff characterizes this testimony as "evasive") (*id.* at 28).

This evidence does not create a genuine issue of material fact. There is nothing nefarious about Concholla and Reierson's having brought Plaintiff's employment records to a meeting. Employers are entitled to perform diligence and even question disability claims without it being evidence of retaliatory animus. *Cf. Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 497 (7th Cir. 2014) (affirming grant of summary judgment where an employer discussed the employee's "possible abuse of . . . FMLA leave," because that was a "reasonable business concern of an employer").

As for the other officers who supposedly received better treatment, it is true that "evidence other employees were treated differently" may be used to demonstrate retaliatory intent. *Greengrass*, 776 F.3d at 486. But Plaintiff has not shown that any employees who did not engage in protected conduct were in fact treated differently. Plaintiff points to one officer who was allowed to have "(1) an opened toe shoe restriction, a (2) minimal walking restriction, and (3) no bending or lifting restriction." (Pltf. Resp. & Cross-Mot. at 29 (citing PSOF ¶ 26).) Additionally, Plaintiff observes that "33 officers on various shifts in various divisions" were allowed "work assignments that were modified for medical reasons." (*Id.* (citing PSOF ¶ 27).) But

these particularized accommodations are different in kind from the sweeping accommodation Plaintiff sought. Plaintiff did not seek a mere walking or lifting restriction; nor did he ask for a broader accommodation on a temporary basis. Instead, Plaintiff demanded that Defendants permanently waive the requirement that he respond to emergency situations and be able to use force to disrupt violent encounters. Because Plaintiff has no evidence that any other employee received such an accommodation, he has not shown any employee was treated differently.

Finally, Plaintiff argues "[a]ny fair reading of Burke's [deposition] testimony . . . shows immediately that he knew more about [Plaintiff's] prior claims than he was letting on." (Pltf. Resp. & Cross-Mot. at 28.) As an initial matter, the Court does not agree with Plaintiff's reading of Burke's testimony. (*See* Dkt. 79-15, Burke Dep. at 137:9-140:8 (testifying that he was aware of Plaintiff's prior lawsuit but was not involved in the suit and did not know the "nuances of the case").)

Even assuming Burke did know the specifics of Plaintiff's previous lawsuit, however, that would not be enough to demonstrate retaliatory intent. Plaintiff did not elicit admissions, or develop any other evidence, that Burke was motivated to retaliate against Plaintiff. And Plaintiff has failed to demonstrate Defendants' stated reason for demoting Plaintiff—that Plaintiff refused to perform essential functions of the position or request a reasonable accommodation that would allow him to do so—was pretextual. *Greengrass*, 776 F.3d at 486 (retaliatory intent can be shown by "evidence the employer's proffered reason for the adverse action was pretextual").

That Burke may have known more about the specifics of the previous lawsuit than he initially admitted is not enough to show Plaintiff's demotion was retaliatory.

Because Plaintiff has not provided sufficient evidence to create a triable issue as to whether Defendants retaliated against him, he cannot proceed to trial using the direct method.

### 2. *Indirect Method*

To make a *prima facie* retaliation case using the indirect method, Plaintiff must show "after opposing the employer's discriminatory practice only he, and not any similarly situated employee who did not complain of discrimination, was subjected to a materially adverse action even though he was performing his job in a satisfactory manner." *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 404 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008). Plaintiff has not met this burden.

As discussed above (*see* Section IV.A.), Plaintiff steadfastly refused to perform certain essential functions of the lieutenant position. Plaintiff has, therefore, failed to create a genuine dispute of fact as to whether he was "performing his job in a satisfactory manner" when Defendants demoted him. *Id.*; *see also Severson*, 872 F.3d at 481 ("the ADA applies only to those who can do the job").

Moreover, Plaintiff's response in opposition to summary judgment is silent as to whether the proposed comparators engaged in protected activity. Accordingly, Plaintiff has not, as he must to pursue the indirect method, demonstrated that his proposed comparators did *not* engage in protected activity. *See Cyrus v. Union Pac. R.R. Co.*, No. 12 C 10248, 2015 WL 5675073, at *9 (N.D. Ill. Sept. 24, 2015) (granting

summary judgment against plaintiff who failed to show "any of the [comparator] applicants did not engage in statutorily protected activity").

Because Plaintiff has not demonstrated a genuine issue of material fact, his retaliation claims cannot survive summary judgment.

## V.    CONCLUSION

For these reasons, Plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted.

SO ORDERED in No. 17-cv-08888.

Date: August 24, 2021

_____

JOHN F. KNESS
United States District Judge